FILED

06 SEP -1 AM 11:16

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _PDL_       DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DANIEL J. SULLIVAN,

                       Plaintiff,

     vs.

DONALD C. WINTER, Secretary,
Department of the Navy,

                     Defendant.

CASE NO. 04CV0003-H (POR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel J. Sullivan ("Plaintiff") filed a complaint on January 5, 2004 against Defendant Donald C. Winter,[1] Secretary of the Navy ("Defendant"), alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626 et seq., and the Veterans Employment Opportunity Act of 1998 ("VEOA"), Pub. L. No. 105-339, 112 Stat. 3182 (codified at 5 U.S.C. § 3330a, et seq.). (Doc. No. 1.) On November 2, 2005, Plaintiff filed a first amended complaint ("FAC"). (Doc. No. 31.) Defendant filed an answer to the FAC on November 14, 2005. (Doc. No. 32.) On July 14, 2006, Defendant filed a motion for summary judgment. (Doc. No. 79.) Plaintiff filed an opposition on July 31, 2006. (Doc. No. 104.) On August 4, 2006, Plaintiff

---

[1] Under Fed. R. Civ. P. 25(d)(1), when a public official named in a complaint in his official capacity ceases to hold office, the action does not terminate, but the official's successor is automatically substituted as a party. On January 3, 2006, Donald C. Winter was sworn in as Secretary of the United States Navy. (Plunkett Decl., n. 1.) Therefore, Donald C. Winter is the proper defendant in this action.

1    submitted an amended opposition. (Doc. No. 123.) Defendant filed a reply on August

2    9, 2006.  (Doc. No. 128.)  The Court held a hearing on Defendant's motion for

3    summary judgment on August 14, 2006.  Cindy Cipriani appeared for Defendant,

4    Plaintiff and co-counsel Joseph Gimbrone appeared for Plaintiff.  For the following

5    reasons, the Court GRANTS Defendant's motion for summary judgment.

6                                              **Background**

7    **A.    The Hiring Process**

8           Beginning in December 2001, the Navy Office of General Counsel ("OGC")

9    solicited candidates for the position of Navy Exchange Service Command West Coast

10   Office ("NEXWCO") counsel.    (Plunkett Decl., ¶ 1; Lodgment, Ex. A at 1-5.)

11   NEXWCO is a field office of the Office of Counsel, Navy Exchange Service Command

12   ("NEXCOM"), which is a field office in the Office of Counsel, Naval Supply Systems

13   Command. (Lodgment, Ex. A at 1.)  The OGC issued Personnel Notice 81-01 to

14   advertise the position.  (Id., Ex. A.)  It stated in part:

15            The position provides legal services and representation to the Director,
              NEXWCO as well as legal support to the Navy Exchange retail stores
16            located in California, Washington, Nevada, Hawaii, Guam and countries
              in the Pacific Ocean area of operations.
17            . . . .

18            Office of Counsel, NEXWCO, is responsible for providing legal advice,
              legal representation, and litigation support to Director, NEXWCO and
19            other designated Navy Exchange activities in the full range of traditional
              Navy OGC legal practice, including government contract law, civilian
20            personnel law, standards of conduct and government ethics, Freedom of
              Information [Act] (FOIA) and Privacy Act law, fiscal law, and
21            environmental law.
22            . . . .

              Though required to be knowledgeable in all areas of OGC practices, the
23            incumbent will focus on representation of the NES in civilian law matters.

24   (Id., Ex. A at 2.)  The Personnel Notice stated that applications for the position "must

25   be received" by January 14, 2002.  (Id., Ex. A at 1; Pl.'s Sep. Stmt. of Facts at 2.)

26          On January 11, 2001, Plaintiff, a 64.7 year old attorney, submitted an application

27   for the position of NEXWCO counsel. (Pl.'s Sep. Stmt. of Facts at 2; Lodgment, Ex.

28   B, U.)  Plaintiff's application consisted of a cover letter, resume, and two writing

                                                    - 2 -

1    samples. (Pl.'s Sep. Stmt. of Facts at 1-2.)  Plaintiff also included documents with his
2    application claiming a veterans' preference under the Veterans Preference Act of 1944
3    ("VPA"), Pub. L. No. 78-359, 59 Stat. 387 (codified at 5 U.S.C. §§ 2108, 3309-3320
4    and its attendant regulations, 5 C.F.R. §§ 302.101-302.403).  (Id. at 2.)

5            Michael Rigg, Counsel for NEXCOM, conducted the application and interview
6    process for the NEXWCO counsel position and made a hiring recommendation to his
7    superiors at the OGC. (Rigg Decl., ¶¶ 1-2.)  Rigg personally interviewed each of the
8    five candidates and evaluated them based on six criteria, including experience,
9    supervisory abilities, education/training, enthusiasm/attitude, confidence, and
10   inventiveness/flexibility. (Id., ¶ 2; Lodgment, Ex. C at 1; Gimbrone Decl., Ex. J.) Rigg
11   assigned letter grades to the candidates in each of the areas of evaluation. (Lodgment,
12   Ex. C.)  Additionally, during the interviews the candidates were allowed to ask
13   questions and freely elaborate on their skills.  (Id.)

14           Rigg created written summaries of each interview. (Lodgment, Ex. F.)  In his
15   summary of Plaintiff's interview, Rigg stated that Plaintiff seemed unsure and hesitant
16   in some respects, and lacked training and experience in many OGC areas.  (Id.)  Rigg
17   also wrote that he found the questions Plaintiff asked during his interview were "rather
18   basic" and demonstrated a lack of knowledge in the areas he would be responsible for
19   as NEXWCO counsel.  (Id.)  In summary of his impressions of Plaintiff, Rigg stated
20   "[a]t this junction Dan doesn't have the skill sets to be Counsel.  If this were a '#2' in
21   an office — maybe, but I don't see him as an independent OGC Counsel (without
22   substantial training and very large learning curve)." (Id.)  Overall, Rigg noted that he
23   thought Plaintiff was personable and experienced and that he had a good interview,
24   however, Rigg ranked Plaintiff last of the candidates interviewed.  (Id.)

25           Robert Helstowski, a former Naval Reserve Judge Advocate and civilian
26   attorney with the Federal Deposit Insurance Corporation also applied for the position.
27   (Rigg Decl., ¶ 3.)  He was 48 years old at the time.  (Lodgment, Ex. N.)  Rigg
28   conducted an interview with Helstowksi. (Rigg Decl., ¶ 3.)  In his written summary

1  of that interview, Rigg wrote that Helstowski was poised, polished, and at ease.

2  (Lodgment, Ex. E.) Rigg also noted that Helstowski had experience in many areas of

3  litigation pertinent to the position.  (Id.)  Rigg wrote that his overall impression of

4  Helstowski was "extremely favorable; I thine [sic] he would do an exceptional job;

5  brings great deal of enthusiasm along with his experience; won't just stand still; will

6  be a 'go getter.'"[2]  (Id.)

7      Rigg verified Helstowski's references, including Donna Huddleston, his former

8  supervisor at the Federal Deposit Insurance Corporation ("FDIC"), and a San Diego

9  Superior Court Commissioner. (Rigg Decl., ¶ 6.)

10      After completing the interview process, Rigg recommended Helstowski to Barry

11  Plunkett, his superior at the OGC. (Lodgment, Ex. G at 1-5; Rigg Decl., ¶ 5.)  In his

12  recommendation letter, Rigg listed the candidates in descending order of suitability for

13  the position.[3] (Lodgment, Ex. G at 1.) He listed Helstowski first, as the most favorable

14  candidate, and Plaintiff last, as the least favorable of the remaining candidates.  (Id.)

15  Rigg concluded that Helstowski was the most qualified because he had "experience in

16  all relevant practice areas as well as substantial litigation and supervisory experience."

17  (Id.)

18      After reviewing Rigg's evaluation, Plunkett conducted an interview with

19  Helstowski via teleconference. (Plunkett Decl., ¶ 3.) Plunkett then recommended

20  Helstowski to his superior, the OGC's General Counsel, Arthur Hildebrandt.  (Id.;

21  Lodgment, Ex. H.)  Plunkett's recommendation letter noted that Plaintiff was the

22  weakest of the candidates he interviewed, stating that while Plaintiff was familiar with

23  the Navy, he lacked experience as an attorney in the Navy. (Lodgment, Ex. H at 2.)

24

25      [2]  Rigg and Helstowski had met previously at the Naval Justice School in 1981
   and for a few weeks at a Naval refresher course in 1993. (Rigg Decl., ¶ 10.)  Rigg
26  testified that they did not interact socially, except for class or group functions.  (Id.)

27

28      [3]  Rigg noted that one of the five candidates he interviewed, the only candidate
   who was an OGC employee,  had voluntarily withdrawn his application prior to the
   recommendation process.  (Lodgment, Ex. G.)

1   Hildebrandt approved the hiring decision and offered the position to Helstowski on
2   June 27, 2002. (Lodgment, Ex. H; Hildebrandt Decl., ¶ 2.)
3           Rigg contacted Plaintiff via e-mail on July 17, 2002 to inform him that
4   NEXWCO had chosen another candidate. (Gimbrone Decl., Ex. DD; Lodgment, Ex.
5   L; Rigg Decl., ¶ 8.) Rigg sent an additional notification to Plaintiff through the U.S.
6   Postal Service on August 15, 2002. (Lodgment, Ex. M.) Rigg wrote that NEXWCO
7   hired Helstowski because of Helstowski's superior litigation experience and knowledge
8   of various subjects learned over the course of twenty years of experience in the public
9   and private sectors. (Id.) The letter stated that the OGC considered Helstowski's
10  knowledge of naval and personnel law and exposure to the commercial sector as a
11  significant factor. (Id.) Rigg also wrote that "Helstowski showed a degree of tenacity
12  and self-confidence sufficient to convince [Rigg]  that he had the drive and
13  determination to get the job done come-what-may." (Id.)
14  **B.      The Veterans' Preference**
15          The NEXWCO counsel position was a non-competitive, excepted service
16  position, filled according to 5 C.F.R. § 302.101(c). Hildebrandt, who approved the
17  final decision to hire Helstowski, believed that § 302.101(c) did not require that the
18  OGC offer a position to a candidate with a veterans' preference when a more qualified
19  candidate existed. (Hildebrandt Decl., ¶ 4.) The OGC did consider the veterans'
20  preference as a positive factor in the hiring decision. (Id.)
21  **C.      Procedural Background**
22          After Plaintiff received the August 15, 2006 letter from Rigg informing him that
23  the OGC had hired Helstowski for the NEXWCO counsel position, he contacted the
24  United States Department of Labor ("DOL"), which investigated his claim for violation
25  of the VEOA. (Lodgment, Ex. P.) The DOL contacted the OGC on September 19,
26  2002 to solicit a response to Plaintiff's allegations.[4] (Id., Ex. P.) The OGC responded
27
28          [4] The DOL assigned a case name and number to Plaintiff's complaint: Daniel
    J. Sullivan v. Department of the Navy, Vets Case No. 09-CA-2002-010-VHP.

1    on October 2, 2002. (Id., Ex. Q.)  On October 9, 2002, the DOL notified Plaintiff that

2    it had closed its investigation because it concluded that Plaintiff's claim lacked merit.

3    (Id., Ex. R.)  The DOL's notification letter advised Plaintiff that the position he had

4    applied for at NEXWCO was a non-competitive, excepted service position under 5

5    C.F.R. § 213.3102(d).  (Id., Ex. R.)  The DOL further stated that each candidate was

6    a veteran and entitled to the veterans' preference. (Id., Ex. R.)  The DOL declined to

7    evaluate the decision of each selecting officer, as it stated that further inquiry was

8    unnecessary because each candidate had been listed as eligible for a veterans'

9    preference. (Id., Ex. R.)

10        Plaintiff appealed the DOL's decision to the Merit Systems Protection Board

11   ("MSPB") on October 28, 2002.  (Id., Ex. S.)  On December 28, 2002, Plaintiff

12   contacted the Equal Employment Opportunity Commission and submitted a Notice of

13   Intent to Sue regarding his claims of age discrimination under § 15(d) of the ADEA,

14   29 U.S.C. § 633a. (Id., Ex. T.) The EEOC issued a Report of Inquiry on July 26, 2003.

15   (Id., Ex. U.)  On December 5, 2003, Plaintiff elected to terminate his appeal to the

16   MSPB pursuant to 5 U.S.C. § 330(b) and file this action.  (Id.)

17        Plaintiff filed a complaint on January 5, 2004 in this Court alleging violations

18   of the VEOA and ADEA based on the OGC's hiring decision. (Doc. No. 1.)  Plaintiff

19   alleges that Defendant violated the ADEA because the OGC based its decision not to

20   hire Plaintiff on his age. (FAC, ¶¶ 21-22.)  He also claims that the policies, practices

21   and procedures for attorney hiring had a disparate, adverse impact on Plaintiff and

22   other attorneys over the age of 40.  (Id.)  He also alleges that Defendant violated the

23   VEOA because the OGC did not apply the appropriate veterans' preference. (Id., ¶¶

24   23-25.) Defendant moves for summary judgment on each of Plaintiff's claims. (Doc.

25   No. 79.)

26   / / / /

27   / / / /

28   / / / /

## Discussion

### A.    Legal Standard for Summary Judgment

A court may grant summary judgment where the non-moving party's claims or defenses are factually unsupported. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325-27 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it "might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact on issues where the non-moving party will bear the burden at trial. <u>Celotex</u>, 477 U.S. at 322-23. Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Id.</u> at 252. Thus, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." <u>Id.</u> at 256. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. <u>Celotex</u>, 477 U.S. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal citation omitted).

When ruling on a summary judgment motion, the Court must examine the evidence in the light most favorable to the non-moving party. <u>Id.</u> The Court does not

04cv0003-h (por)

1    engage in credibility determinations, weighing of evidence, or drawing of legitimate

2    inferences from the facts; these functions are for the trier of fact. <u>Anderson</u>, 477 U.S.

3    at 255.

4 **B.   Analysis**

5      **1.   The VEOA Claim**

6       The VPA established a general preference for honorably discharged veterans

7    over non-veterans in federal hiring practices and during reductions in work force.

8    <u>Monaco v. U.S.</u>, 523 F.2d 935, 937 (9th Cir. 1975). "The VPA generally gives a

9    qualifying veteran, known as a 'preference eligible,' various preferences in applying

10    for civil service positions within the competitive and excepted services." <u>Patterson v.</u>

11    <u>Dep't. of the Interior</u>, 424 F.3d 1151, 1155 (Fed. Cir. 2005). Preference eligible

12    veterans with three years of active service, separated from the armed services under

13    honorable conditions, cannot be denied the opportunity to compete for agency positions

14    for which the agency accepts outside applications. 5 U.S.C. § 3304(f)(1).

15       The federal government divides civil service positions into two categories, the

16    competitive and excepted services. 5 U.S.C. §§ 2102-2103. Competitive civil service

17    positions include "civilian positions in the executive branch . . . unless specifically

18    excepted therefrom' and 'all positions in the legislative and judicial branches of the

19    federal government . . . which are specifically made subject to the civil service laws by

20    statute.'" <u>Patterson</u>, 424 F.3d at 1155; <u>see also</u> 5 C.F.R. § 1.2 (2005). Excepted civil

21    service positions are those not in the Senior Executive or competitive service.

22    <u>Patterson</u>, 424 F.3d at 1155; <u>see also</u> 5 U.S.C. § 2103.

23       Several excepted service positions are wholly exempted from the appointment

24    procedures set forth in the regulations. <u>Patterson</u>, 424 F.3d at 1156-57. For these

25    positions, an agency is not required to apply the appointment procedures of the VPA,

26    but shall follow the principle of the veterans' preference "as far as administratively

27    feasible." <u>Id.</u>; <u>see also</u> 5 C.F.R. § 302.101(c). "[T]his means an agency must consider

28    veteran status as a 'positive factor' in reviewing applications." <u>Id.</u> at 1159. Attorney

1   positions, like the NEXWCO counsel position, fall within the exempted category. 5

2   C.F.R. § 302.101(c)(9).

3       Plaintiff is a disabled veteran as defined by 5 U.S.C. § 2108(2) because he is in

4   receipt of service related disability compensation due to a disability of less than 30

5   percent. (Gimbrone Decl., Ex. S.) Due to his disability, Plaintiff is preference eligible

6   under the VPA, 5 U.S.C. § 2108(3).

7       The NEXWCO position Plaintiff applied for was an exempted, excepted service

8   position. 5 C.F.R. § 302.101(c)(9). Therefore, the OGC was only required to follow

9   the principle of veterans' preference as a positive factor in hiring for the NEXWCO

10  counsel position as far as was administratively feasible. 5 C.F.R. § 302.101(c). The

11  OGC considered applicants' entitlement to a veterans' preference as a positive factor

12  in hiring decisions.  (Gimbrone Decl., Ex. A at 26-27.)  In this case, the record

13  establishes that the OGC adhered to the requirements of the VEOA and VPA.

14  (Gimbrone Decl., Ex. A at 26-29; Rigg Decl., ¶ 9; Plunkett Decl., ¶ 5; Hildebrandt

15  Decl., ¶ 3.)

16      Rigg recommended Helstowski for the position because Rigg determined that

17  he was the most qualified candidate based on his interview and relevant experience.

18  (Id. at 2.) Rigg noted in his recommendation letter that Plaintiff was the least qualified

19  of the candidates he interviewed.  (Id. at 3.)  He determined that Plaintiff had little

20  experience in OGC practice areas and noted that Plaintiff did not have a strong

21  interview. (Id.) Both Plunkett and Hildebrandt, Rigg's superiors, agreed with Rigg's

22  assessment. (Lodgment, Ex.'s G, H.) As the position of NEXWCO counsel was an

23  excepted service position exempted from the appointment procedures under the VPA,

24  the OGC was only required to consider Plaintiff's veterans' preference status as a

25  positive factor. See Patterson, 424 F.3d at 1159. The record shows that the OGC

26  considered Plaintiff's veterans' preference status as a positive factor. (Lodgment, Ex.'s

27  G, H; Hildebrandt Decl., ¶¶ 3-4; Plunkett Decl., ¶ 5.)

28  / / / /

1    Plaintiff argues that the OGC should not have hired Helstowski because

2 Helstowski was not entitled to a veterans' preference. However, the OGC was not

3 required to hire someone with a veterans' preference. For attorney positions, veterans'

4 preference is only a positive factor, not the deciding factor. See Patterson, 424 F.3d

5 at 1159. The record reflects that the OGC based its decision on Helstowski's

6 qualifications, references and interview, not on his claim to a veterans' preference.

7 (Plunkett Decl., ¶¶ 5-6)

8    Additionally, Plaintiff argues that the OGC hired Helstowski because of a

9 friendship with Rigg. However, the record does not support this assertion. (Lodgment,

10 Ex.'s G, H.) Furthermore, Plunkett, Rigg's supervisor, conducted an independent

11 interview of Helstowski and made a recommendation to hire Helstowski based on his

12 review of Helstowski's qualifications. (Id., Ex. G; Plunkett Decl., ¶ 3.) Finally, the

13 recommendation was approved by Hildebrandt. (Id., Ex. H; Hildebrandt Decl., ¶¶ 2-3.)

14  There is no evidence that Plunkett or Hildebrandt knew or had any reason to favor

15 Helstowski. Furthermore, while Rigg and Helstowski had met previously, Plaintiff has

16 not presented any evidence to show that they were friends or that they interacted

17 socially beyond the few occasions they met in the early 1980's and 1990's. (Rigg.

18 Decl., ¶ 10.) The record reflects that Helstowski had experience in OGC practice areas,

19 had held supervisory positions, and had performed well in the interviews.[5] (Lodgment

20 Ex.'s G, H; Plunkett Decl., ¶ 6; Rigg Decl., ¶ 10.)

21    Accordingly, the Court concludes that Defendant did not violate the VEOA and

22 that no question of fact exists as to this issue. See Fed. R. Civ. P. 56(c). The party

23 opposing a motion for summary judgment cannot rest on the allegations in the

24

25    [5]    The record reflects that Rigg, Plunkett and Hildebrandt each had the
opportunity to reflect on the employment decision and weigh the candidates'
26 qualifications. As the Court previously noted, the OGC's employment decision is well
supported by the declarations and deposition testimony of Rigg, Plunkett, and
27 Hildebrandt, concerning what they considered in the decision making process. (Decl.'s
of Plunkett, Rigg, and Hildebrandt; Suppl. Rigg Decl.; Lodgment Ex.'s G, H, BB; Plf's
28 Ex.'s B, C, E.) Therefore, the deposition of Matthew Wheeler, an ailing, disabled,
hospitalized attorney, was unnecessary and untimely under Fed. R. Evid. 403.

04cv0003-h (por)

1    complaint; he must come forward with specific facts to show that a genuine issue exists

2    for trial.   Anderson, 477 U.S. at 256; see also Celotex, 477 U.S. at 322-23.

3    Accordingly, the Court GRANTS Defendant's motion for summary judgment on

4    Plaintiff's VEOA claim.

5        **2.**    **The ADEA Claims**

6            **a.**    **Disparate Treatment**

7          Plaintiff contends that the OGC discriminated against him based on his age in

8    violation of the ADEA.  (FAC, ¶ 22(a).)  Plaintiff was 64.7 years of age when he

9    applied, while Helstowski was 48. Defendant contends Plaintiff's age was not a factor.

10         The ADEA provides that it is "unlawful for an employer . . . to fail or refuse to

11   hire or to discharge any individual or otherwise discriminate against any individual

12   with respect to his compensation, terms, conditions, or privileges of employment,

13   because of such individual's age . . . ." 29 U.S.C. § 623(a)(1).  The ADEA protects

14   individuals at least 40 years of age from discrimination by employers or prospective

15   employers. 29 U.S.C. § 631.  Employment discrimination under the ADEA falls into

16   one of two categories, disparate impact or disparate treatment. Enlow v. Salem-Keizer

17   Yellow Cab Co., Inc., 389 F.3d 802, 811 (9th Cir. 2004) (citing Hazen Paper Co. v.

18   Biggins, 507 U.S. 604 (1993)).

19         An employer engages in disparate treatment in the context of the ADEA by

20   treating certain people less favorably due to their age.  Enlow, 389 F.3d at 811

21   (citations omitted).  To violate the ADEA, an employer's decision must actually have

22   been motivated by the plaintiff's age. Reeves, 530 U.S. 13, 141 (2000).

23         If the plaintiff presents direct evidence of a violation of the ADEA, the court

24   need not engage in the burden shifting analysis set forth by the Supreme Court in

25   McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine if summary

26   judgment is appropriate. Enlow, 389 F.3d at 811; see also Trans World Airlines, Inc.

27   v. Thurston, 469 U.S. 1111 (1983).  However, when the plaintiff does not present direct

28   evidence of discrimination, the Court must apply the McDonnell Douglas test.  (Id.)

1    Under the <u>McDonnell Douglas</u> test, the plaintiff has the initial burden of
2  establishing a prima facie case of age discrimination. <u>Texas Dep't. of Comm. Affairs</u>
3  <u>v. Burdine</u>, 450 U.S. 248, 252-53 (1981) (citing <u>McDonnell Douglas</u>, 411 U.S. at
4  1824)).  To carry the burden, "[t]he plaintiff must prove by a preponderance of the
5  evidence that [he] applied for an available position for which [he] was qualified, but
6  was rejected under circumstances which give rise to an inference of unlawful
7  discrimination." <u>Id.</u> at 253.  If the plaintiff successfully demonstrates a prima facie
8  case, the burden shifts and the defendant must set forth a legitimate, nondiscriminatory
9  explanation for  its decision to reject the plaintiff. <u>Id.</u>  If the defendant presents a
10  legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to prove by
11  a preponderance of the evidence that the defendant's stated reason was a pretext for
12  discrimination. <u>United States Postal Serv. Board of Governors v. Aikens</u>, 460 U.S.
13  711, 715 (1983) (citations omitted).

14    Plaintiff asserts that the OGC's hiring decision gave rise to an inference of age
15  discrimination.  Plaintiff claims that he was qualified for the NEXWCO counsel
16  position, that he was 64 years old at the time, and that the OGC hired someone younger
17  for the position. <u>See</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1285 (9th Cir. 2000).
18  Defendant argues that there is no evidence of age discrimination, as the applicant it
19  hired was 48, well over the ADEA protections for individuals at least 40 years of age.
20  <u>See</u> 29 U.S.C. § 631.

21    The Court begins its analysis with the second factor in the <u>McDonnell Douglas</u>
22  test, whether Defendant has set forth a legitimate, nondiscriminatory reason for the
23  employment action. <u>See</u> <u>Burdine</u>, 450 U.S. at 252-53.  Defendant presents several
24  reasons for not hiring Plaintiff.  Defendant contends that the information known to
25  Rigg, Plunkett and Hildebrandt at the time of the hiring decision indicated that
26  Helstowski was a more desirable candidate, primarily because of his interview and past
27  work experience with the Navy and the FDIC.  (Lodgment, Ex.'s G-H.)   After
28  interviewing the candidates, Rigg specifically noted that Plaintiff seemed hesitant and

1   unsure of himself in the interview, and asked basic questions, while Helstowski was

2   confident and poised. (Id., Ex. G at 2-3.)  Furthermore, Helstowski had experience

3   relevant to the position from his employment with the Navy, as a Civilian Advisor in

4   the Naval Judge Advocate Corps, and with the federal government at the FDIC. (Id.,

5   Ex.'s G, H.)  Plaintiff did not have experience in the Navy as an attorney and he had

6   little experience in OGC practice areas. (Id., Ex.'s G, H.)  None of the documents in

7   the record evidence that age was a factor in the OGC's decision to hire Helstowski.

8   Furthermore, Plaintiff admitted that he had no way of knowing that Helstowski was not

9   the more qualified candidate. (Id., Ex. J at 51.)  The Court concludes Defendant has

10  shown legitimate, non-discriminatory reasons for not hiring Plaintiff. See Burdine, 450

11  U.S. at 252-53.  Therefore, the burden shifts back to Plaintiff to show pretext. See

12  Aikens, 460 U.S. at 715.

13          To prove pretext based on qualifications, the plaintiff must prove that the other

14  candidates were not more qualified with respect to the criteria that the defendant

15  actually employed. Coleman, 232 F.3d at 1285 (quoting Cotton v. City of Alameda,

16  812 F.2d 1245, 1249 (9th Cir. 1987)).  A plaintiff's subjective belief in his own

17  superior qualifications does not raise a genuine issue of fact. Id. (citing Bradley v.

18  Harcourt, Brace & Co., 104 F.3d 267, 270 (9th Cir. 1990)).  A plaintiff does not meet

19  his burden of proving pretext by presenting evidence of his superior qualifications

20  where he introduces no evidence that the defendant's stated explanation for not hiring

21  him was pretextual. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir.

22  1990).

23          Plaintiff asserts that Helstowski could not have been the superior candidate, as

24  Plaintiff had several years of public employment law experience, a qualification listed

25  in Personnel Notice 81-01. (Id.; Lodgment, Ex. A at 1.)  However, the Personnel

26  Notice also stated:

27          [R]esponsibilities may include the full range of OGC practice, including
            ethics, Freedom of Information Act, fiscal law, procurement, and
28          litigation. The successful candidate will have strong legal analysis skills,
            excellent oral and written communication skills, and an ability to develop

strong attorney-client relations . . . . Experience in other areas of law listed will be considered a plus . . . .

(Id.) Plaintiff does not contend that he was more qualified in each of these areas than Helstowski. Plaintiff asserts that he was more qualified for the position because of his employment law experience in civilian private practice. (Lodgment, Ex. J at 12-13.) Plaintiff does not claim to have worked as an attorney for the Navy. (Id., Ex. J at 17.) Additionally, Plaintiff admits that he had limited experience with federal government contracts and business disputes. (Id., Ex. J at 16, 19.) Helstowski, on the other hand, had experience as a JAG attorney, had worked in civil litigation at private firms, and for the federal government at the FDIC. (Id., Ex. D.) Comparing the qualifications set forth in Personnel Notice 81-01 with the qualifications of Plaintiff and Helstowski known to the decision makers at the time of the hiring decision, the Court concludes that Plaintiff has not presented sufficient facts to establish pretext.[6] See Aikens, 460 U.S. at 715. Finally, the Court notes that Plaintiff was ranked last among the four remaining candidates after the interviews. (Lodgment, Ex.'s G, H.)

Furthermore, Plaintiff admitted that he could not detect a pretext of age discrimination based on the letter from Rigg notifying Plaintiff that the OGC had chosen another applicant. (Id., Ex. J at 52.) Plaintiff's subjective opinion that he was more qualified than the candidate ultimately hired does not establish pretext. See Merrick, 892 F.2d at 1438. Plaintiff has not presented sufficient evidence to raise a triable issue of fact concerning pretext. See Aikens, 460 U.S. at 715.

Accordingly, the Court concludes that the OGC did not engage in willful age discrimination in violation of the ADEA. See 29 U.S.C. § 623(a)(1). No question of fact exists as to Plaintiff's disparate treatment claim. See Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 324. Therefore, the Court GRANTS Defendant's motion for summary judgment on this claim.

---

[6]  Information about the candidates' background learned after the employment decision but not known to the employer at the time is generally not significant to the Court's discrimination analysis. See e.g. McKennon v. Nashville Banner Publishing co., 513 U.S. 352, 361-363 (1995).

### b.    Disparate Impact

Plaintiff also claims that the OGC's hiring policies had a disparate, adverse impact on Plaintiff and a class of similarly situated attorneys over the age of 40. (FAC, ¶ 22(b).) Defendant argues that the challenged practice is based on reasonable factors other than age.

To present a prima facie case for violation of the ADEA on a theory of disparate impact, a plaintiff must demonstrate that the defendant employs a facially neutral practice which has a significant discriminatory impact on the protected class. Cotton, 812 F.2d at 1247. The plaintiff must be a member of the protected class. Id. To prove disparate impact, a plaintiff must identify specifically the employer's practices that caused the statistical disparities. Smith v. City of Jackson, Miss., 544 U.S. 228, 241-42 (2005). In considering a disparate impact claim, the court focuses on statistical disparities and the parties' explanations for those disparities, not incidences of discrimination. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990) (citations omitted). A disparate impact claim will fail where the employment action is based on reasonable factors other than age. 29 U.S.C. § 623(f)(1); see also Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993). "Certain circumstances unquestionably affect older workers more strongly, as a group, than they do younger workers . . . . Thus, it is not surprising that certain employment criteria that are routinely used may be reasonable despite their adverse impact on older workers . . . ." Smith, 544 U.S. at 240-41 (quotations omitted).

A plaintiff establishes a prima facie case of disparate impact if he: (1) specifically identifies the challenged employment practice/criteria; (2) demonstrates disparate impact; and (3) establishes causation through the use of statistical evidence showing that the defendant's employment practices caused applicants who are members of the protected group to be excluded from jobs or promotions. Rose, 902 F.2d at 1424 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977 (1988)). The statistical disparities at issue must be significant or substantial. Id. If the plaintiff establishes a

- 15 -

1   prima facie case of disparate impact, the burden then shifts to the defendant to offer his

2   own statistics or to disprove the plaintiff's statistical evidence. Id. If the defendant

3   meets this burden, then the plaintiff must show that alternative practices without a

4   disparate effect would serve the employer's purposes. Id.

5       Plaintiff has not established a prima facie case of disparate impact. See Rose,

6   902 F.2d at 1424. He presents statistical reports to show that there are fewer attorneys

7   over the age of 65 in the OGC than in the general attorney population. (Gimbrone

8   Decl., Ex.'s G, H.) However, his expert analyses do not establish a causal connection

9   between the OGC's practice of advertising for attorney positions internally and the

10  alleged statistical disparity, nor do they account for reasons other than age. See Rose,

11  902 F.2d at 1424.

12      Even if Plaintiff established a prima facie case of disparate impact, the record

13  evidences that the OGC's internal hiring practices were motivated by legitimate

14  business reasons unrelated to age. See 29 U.S.C. § 623(f)(1); see also Hazen, 507 U.S.

15  at 609. The OGC has determined that desirable candidates with the experience and

16  qualifications pertinent to attorney positions are most likely to be found within the

17  OGC. (Id.) Thus, for the purposes of efficiency and cost savings, it is practical for the

18  OGC to hire from within its own ranks. See Hazen, 507 U.S. at 609.

19      Defendant offers evidence of the early retirement incentives for federal

20  employees. Under the Civil Service Retirement System ("CSRS") and the Federal

21  Employee Retirement System ("FERS"), federal government attorneys may retire

22  voluntarily at the age of 55 with 30 or more years of service, at 60 with 20 years of

23  service, or at 62 with five years. (Roehm Decl., ¶ 24.) The retirement system

24  documents a valid reason for any alleged difference between the number of attorneys

25  over the age of 65 in the OGC and in the general population. (Roehm Decl., ¶ 24.)

26      Accordingly, the Court concludes that no genuine issue of fact exists as to

27  disparate impact claim. The party opposing a motion for summary judgment must

28  come forward with information to demonstrate that a genuine issue of fact exists.

- 16 -

04cv0003-h (por)

1  <u>Celotex</u>, 477 U.S. at 324.  Plaintiff has not met his burden under <u>Celotex</u> to show a

2  factual dispute on this issue.  Therefore, the Court GRANTS Defendant's motion for

3  summary judgment on the disparate impact claim.  Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477

4  U.S. at 324.

5  **C.    Evidentiary Objections**

6       Plaintiff objects to certain portions of the declarations of Daniel J. Shippen,

7  Arthur Hildebrandt, and Natalie Roehm, and to the original and supplemental

8  declarations of Barry Plunkett, and Michael Rigg.  Defendant objects to certain

9  portions of Plaintiff's Exhibits D, F-O, R, X, and EE, attached to the declaration of

10  Joseph Gimbrone.  To the extent that the evidence is proper under the Federal Rules

11  of Evidence, the Court considered the evidence.  To the extent the evidence is not

12  proper, the Court did not consider it.

13                              **Conclusion**

14       For the reasons stated above, the Court **GRANTS** Defendant's motion for

15  summary judgment.

16       IT IS SO ORDERED.

17  DATED: ___8/31/06___

18

19                              _Marilyn L. Huff_

20                              MARILYN L. HUFF, District Judge
                                UNITED STATES DISTRICT COURT

21

22

23

24

25

26

27

28

1

**COPIES TO:**
Joseph L Gimbrone

2   Law Office of Joseph L Gimbrone
1901 First Avenue, Suite 200

3   San Diego, CA 92101-2382

4   Daniel J. Sullivan
Law Offices of Daniel Sullivan

5   1901 First Ave., Suite 200
San Diego, CA 92101-2382

6

US Attorney, Civil Division

7   US Attorney's Office, Southern District of California
880 front Street, suite 6253

8   San Diego, CA 92101

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

04cv0003-h (por)